IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOMINIQUE L. *et al.*,                  )
                                        )
                         Plaintiffs     )
                                        )    Civil Action No.: 10 C 7819
        v.                              )
                                        )    Suzanne B. Conlon, Judge
BOARD OF EDUCATION OF THE CITY          )
OF CHICAGO, *et al.*,                   )
                                        )
                         Defendants.    )
                                        )

## MEMORANDUM OPINION AND ORDER

Dominique L. filed suit on behalf of herself and her school-aged son, D.C.C., seeking

attorneys fees under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400

*et seq.*, and an injunction under 42 U.S.C. § 1983 to enforce the favorable decision she received

after a due process hearing concerning D.C.C.'s special education services.  Plaintiffs seek a

preliminary injunction for the school district to immediately implement the hearing officer's

decision in its entirety.  Defendants Board of Education of the City of Chicago ("Chicago

Board"), Illinois State Board of Education ("ISBE"), and Christopher A. Koch, sued in his

official capacity as the superintendent of the ISBE, move to dismiss.

### I. Background

As of the filing of the amended complaint, D.C.C. is a ten-year-old boy who attends fifth

grade in the Chicago Public Schools.  Am. Compl. ¶ 2.  D.C.C. has attention deficit hyperactivity

disorder, bipolar disorder, chronic asthma, and a swallowing disorder.  *Id.* ¶¶ 7–9.  As a result, he

1

takes several medications, cannot use the stairs, and must drink liquids with a thickening agent and under adult supervision. *Id.* ¶¶ 7–8.

In March 2010, Dominique L. filed with the assistance of counsel a due process complaint, alleging the school district had not provided D.C.C. with a free and appropriate public education since September 2008. Am. Compl. ¶ 12. Following a five-day hearing, the hearing officer found in favor of Dominique L. and D.C.C. *Id.* ¶ 17. The hearing officer ordered the school district to pay for independent educational evaluations in areas where inadequate or nonexistent evaluations had been conducted. *Id.* ¶ 18(B). The hearing officer specified the type of classroom placement D.C.C. required and provided, *inter alia*, a minimum number of minutes per week of social work or psychological counseling and speech language therapy. *Id.* ¶ 18(C). In addition, the hearing officer ordered the school district to implement the independent evaluators' recommendations regarding direct occupational therapy services and direct assistive technology services. *Id.* As compensatory education, the hearing officer ordered two years of additional social work or psychological counseling services for 30 minutes per week, 200 hours of tutoring, and "[s]uch additional services as may be recommended by any ordered [independent educational evaluations]." *Id.* ¶ 18(D). The school district was ordered to convene a meeting to formulate D.C.C.'s individual education plan ("IEP") before September 17, 2010, conduct an extensive search for records pertaining to D.C.C., and provide Dominique L. with monthly progress reports. *Id.* ¶ 18(F)–(G).

On September 28, 2010, after the hearing officer's September 17 deadline, D.C.C.'s IEP was completed. Am. Compl. ¶ 23. Dominique L. and D.C.C. contend the IEP does not fully implement the hearing officer's orders. *Id.* ¶¶ 22–26. Counsel for Dominique L. and D.C.C.

wrote ISBE several times to complain about the school district's noncompliance. In the first letter, counsel complained about the delay in formulating D.C.C.'s IEP. Am. Compl. ¶ 22. In the second, counsel complained that the formulated IEP failed to meet the hearing officer's specifications. *Id.* ¶ 27. The third letter reiterated the same complaints and asserted the school district did not adequately produce D.C.C.'s school records. *Id.* ¶ 28. The fourth letter again objected to how the hearing officer's order was being implemented. *Id.* ¶ 29.

Despite these objections, the ISBE due process coordinator concluded the school district was in full compliance with the hearing officer's order and announced compliance monitoring would be closed. Am. Compl. ¶ 31. Dominique L. and D.C.C. objected to the decision, but the coordinator responded that the compliance determination was final. *Id.* ¶ 32.

Dominique L. and D.C.C. filed suit. Count I of the first amended complaint seeks injunctive relief against Chicago Board, seeking to enforce the hearing officer's decision. Count II seeks to enjoin ISBE and Koch to ensure Chicago Board's compliance with the hearing officer's decision. Count III seeks attorney's fees.

## II. Motions to Dismiss

Chicago Board moves to dismiss Count I of the first amended complaint for failure to state a claim. Chicago Board argues this court's decision in *Brown v. District 299—Chicago Public School*, No. 09 C 4316, 2010 WL 5439711 (N.D. Ill. Dec. 27, 2010) (Conlon, J.), establishes that § 1983 cannot be used to enforce the hearing officer's decision. ISBE and Koch also move to dismiss, adopting Chicago Board's arguments. ISBE separately argues it is not a person who can be sued under § 1983 and seeks dismissal under Federal Rule of Civil Procedure 12(b)(1).

3

Dominique L. and D.C.C. respond that *Brown* is distinguishable and cite cases in which § 1983 is used to enforce a hearing officer's decision. They do not contest dismissal of ISBE as a defendant because Koch, sued in his official capacity, is an adequate substitute.

Defendants read *Brown* too broadly and overlook that the opinion cautions against making blanket statements about whether § 1983 applies to a statute as a whole. Instead, the opinion notes the importance of examining plaintiffs' requested relief in light of the existing statutory remedies when determining whether § 1983 applies. *See Brown*, 2010 WL 5439711, at *3 ("the procedural safeguards in each subchapter should be analyzed separately to determine whether each remedial scheme precludes a § 1983 remedy").

The court must therefore examine existing IDEA mechanisms for enforcing a non-appealed hearing officer's decision. To initiate a due process hearing, a parent unsatisfied with "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate education," may file a complaint and request a hearing. 20 U.S.C. § 1415(b)(6), (f). The IDEA requires states to provide an impartial due process hearing to resolve a complaint. 20 U.S.C. § 1415(f); *see* 105 ILCS 5/14-8.02a (due process hearings in Illinois). Illinois does not require an administrative appeal. 105 ILCS 4/15-8.02a(h), (i). Thus, after the hearing, "any party aggrieved by the findings and decision" of the due process hearing has the right to file a civil action appealing the decision. 20 U.S.C. § 1415(i)(2); 105 ILCS 5/14-8.02a(h). If a decision is not appealed, it becomes final. 20 U.S.C. § 1415(i)(1). The IDEA allows parties to go to court to enforce a written mediation agreement and a written settlement agreement, 20 U.S.C. § 1415(e)(2)(F)(iii) (written mediation agreement), (f)(2)(B)(iii)(II) (written settlement agreement), but is silent about enforcing a hearing officer's final, non-

appealed decision. Regulations task state boards of educations with ensuring compliance but provide no judicial review of the state board's actions. 20 C.F.R. § 300.600(a); 23 ILL. ADMIN. CODE § 226.675.

Plaintiffs prevailed at the administrative level, receiving a fully favorable decision. The school district did not appeal or request clarification, so the hearing officer's decision is final and must be implemented as written. *See* 105 ILCS 5/14-8.02a(h). The favorable decision below makes it doubtful that plaintiffs may resort to the IDEA to force the school district to comply with the hearing officer's decision. The Seventh Circuit has not spoken on this issue. However, several courts have held that a party who received a favorable decision in the due process hearing does not have a right to file an administrative appeal or civil action under the IDEA because the party is not "aggrieved by the findings and decision" of the hearing officer, but rather is aggrieved by the other party's subsequent actions. *Blackman v. District of Columbia*, 456 F.3d 167, 172 n.6 (D.C. Cir. 2006); *Robinson v. Pinderhughes*, 810 F.2d 1270, 1272–75 (4th Cir. 1987); *Metro. Sch. Dist. v. Buskirk*, 950 F. Supp. 899, 902–03 (S.D. Ind. 1997) (Barker, C.J.); *Moubry v. Indep. Sch. Dist. No. 696*, 951 F. Supp. 867, 885–86 (D. Minn. 1996) (Kyle, J.); *Reid v. Bd. of Educ.*, 765 F. Supp. 965, 969 (N.D. Ill. 1991) (Duff, J.); *see also J.S. v. Isle of Wright County Sch. Bd.*, 402 F.3d 468, 479–80 (4th Cir. 2005) (contrasting situation where plaintiff impermissibly attempted to use § 1983 to circumvent or enlarge the remedies available under the IDEA with situation where plaintiffs "achieved a victory under the [IDEA] but were powerless to enforce it"). The courts concluded there is no statutory basis for a prevailing party to sue under the IDEA. Instead, courts that have considered the issue allowed the parties to use § 1983 to enforce the decisions. *See Blackman*, 456 F.3d at 172 n.6 (assuming without deciding)*; Jeremy*

5

*H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 279–82 (3d Cir. 1996); *Robinson*, 810 F.2d at

1272–75; *Reid*, 765 F. Supp. at 969; *see also A.R. ex rel R.V. v. N.Y. City Dep't of Educ.*, 407

F.3d 65, 76 (2d Cir. 2005); *Porter v. Bd. of Trs.*, 307 F.3d 1064, 1069 n.7 (9th Cir. 2002)

(declining to decide whether enforcement action could be brought only under § 1983 because

parties did not contest IDEA was available); *Moubry*, 951 F. Supp. at 886 n.13.

 Conversely, the First Circuit has held that a parent or student can be "aggrieved" under

the IDEA if the school district fails to implement the hearing officer's order. *Nieves-Márquez v.*

*Puerto Rico*, 353 F.3d 108, 115–17 (1st Cir. 2003). The First Circuit reasoned Congress could

not have intended to leave a successful party without a remedy under the IDEA to enforce a

favorable decision. *Id.* at 115–16. The court expressly declined to decide whether a plaintiff

could also use § 1983 to enforce a favorable decision. *Id.* at 116 n.4.

 In accordance with the majority of circuit decisions, this court is persuaded that plaintiffs

may proceed under § 1983. Defendants do not cite a part of the IDEA that would allow for

judicial review of the favorable decision. The IDEA governs the proceedings up through the

final adjudication of a child's rights under the IDEA. If a civil action is filed, the court would be

able to enforce its own decision. *See Autotech Techs. LP v. Integral Research & Dev. Corp.*, 499

F.3d 737, 744 (7th Cir. 2007). However, without a civil action, the IDEA does not provide for

further action on a hearing officer's decision. In fact, under Illinois law, the hearing officer loses

jurisdiction after the decision is issued except to consider a motion for clarification filed within

five days of the decision. 105 ILCS 5/14-8.02a(h). Therefore, D.C.C. may use § 1983, not to

adjudicate his rights under the IDEA, but to enforce those rights as determined finally by the

hearing officer.

### III. Preliminary Injunction

To receive a preliminary injunction, plaintiffs must establish (1) they are likely to prevail on the merits; (2) they are likely to suffer irreparable harm without the injunction; (3) the harm they would suffer is greater than the harm defendants would suffer in carrying out the injunction; and (4) the injunction is in public interest. *Judge v. Quinn*, 612 F.3d 537, 546 (7th Cir. 2010).

### A. Likelihood of Success on the Merits

Defendants do not argue the school district is in compliance with the hearing officer's decision. Rather, they argue plaintiffs cannot succeed on the merits because they fail to state a claim under § 1983. As discussed above, this argument fails; § 1983 is available to enjoin compliance with a hearing officer's favorable decision. Therefore, plaintiffs are likely to prevail to the extent the school district is not in compliance with the hearing officer's decision. The next issue, then, is to determine whether plaintiffs have sufficiently shown noncompliance.

The hearing officer ordered extensive relief for D.C.C. The hearing officer found that the school district conducted inadequate assessments in several areas and ordered it to pay for independent education evaluations in areas, including assistive technology, speech language, occupational therapy, psychological testing, and full cognitive testing. M. for Prelim. Inj., Ex. A-29–30. In addition to specific services, the hearing officer ordered generally "[d]irect occupational therapy services that may be recommended by an independent evaluator," and "[d]irect assistive technology services to be provided as may be recommended by an independent evaluator." *Id.* at Ex. A-30. The hearing officer awarded compensatory education to compensate for two years of deficient education. Again, in addition to specific services, the hearing officer ordered "[s]uch additional services as may be recommended by any ordered [independent

educational evaluators]." *Id.* The school district was ordered to report monthly to Dominique L. about D.C.C.'s progress and to conduct a records search and disclose all documents relating to D.C.C.

Plaintiffs contend the school district is not in compliance in several respects. First, plaintiffs assert the IEP does not include an intensive reading remediation program or specific instruction in written language as recommended by the independent psychological evaluation. Second, an independent speech pathologist recommended that a speech pathologist consult with the school staff involved with D.C.C.'s education 30 minutes *per week*. But the IEP authorized only 35 minutes *per month*. Third, two of the independent evaluators recommended use of a computer both at school and at home, and the speech pathologist recommended a specific software program and 60 minutes per week of direct support on the software and computer. But the IEP omits reference to these services, providing only 30 minutes per week of instruction on keyboarding, not on use of the software. Fourth, the independent occupational therapist recommended that D.C.C.'s occupational therapist consult with his other service providers for 60 minutes per month, but the IEP provides only 20 minutes per month. Additionally, the IEP omits reference to the recommended occupational therapy support for sensory processing, safety, self-help skills, and organizational management; nor does the IEP include the recommended assessment by a physical therapist to check balance and safety in mobility. Finally, plaintiffs contend the school district has not provided Dominique L. with monthly progress reports or all of D.C.C.'s records.

Plaintiffs seem to contend that the hearing officer ordered the school district to comply with every recommendation the independent evaluators made. That is too broad. The hearing

officer ordered that the school district "shall" provide "*direct* occupational therapy" and "*direct* assistive technology services" as recommended by the independent evaluators. M. for Prelim. Inj., Ex. A-30 (emphasis added). This language requires the school district to enact all recommendations for *direct* services in those areas, but not the *consultative* services. Plaintiffs thus have shown a likelihood of success as to the recommendations for computer use at school and home; assistive computer software; 60 minutes of direct support on the computer and software; occupational therapy relating to sensory processing, safety, self-help skills, and organizational management; and a physical therapy assessment.

Dominique L. and D.C.C. have not established the hearing officer's order includes the consultative services they request. For the authority to order consultive services, plaintiffs rely on the compensatory education portion of the decision. The hearing officer ordered "[s]uch additional services as may be recommended by any ordered [independent education evaluations]." M. for Prelim. Inj., Ex. A-30. However, this order is not the blank check plaintiffs wish; the additional recommended services must be linked to compensatory education. Plaintiffs have shown a likelihood of success as to the reading remediation program and written language instruction. But plaintiffs have not explained how consultative services could be considered compensatory education.

The failure to provide monthly progress reports and D.C.C.'s records is a clear violation of the hearing officer's order.

Finally, the hearing officer's order does not impose any duties on ISBE, nor do plaintiffs identify a separate source that imposes duties on ISBE. Accordingly, plaintiffs have not shown they are likely to succeed on the merits concerning the claims against Koch.

9

## B. Irreparable Harm

Plaintiffs argue a "refusal to implement a hearing officer's decision has been found to be per se irreparable injury." Defendants deny that noncompliance is a *per se* injury and argue the preliminary injunction should be denied because the most essential elements of the educational program are being provided. Defendants contend, for example, that several software programs are already provided to D.C.C. at school, but they do not provide evidence of whether the provided software is similar to the recommended software.

Plaintiffs overreach in asserting a *per se* irreparable injury. More accurately, "[w]here a school district has refused to implement a hearing officer's decision, courts *generally* find irreparable harm." *Olsen v. Robbinsdale Area Schs.*, No. 04-2707 (RHK/AJB), 2004 U.S. Dist. LEXIS 9858, at *11 (D. Minn. May 28, 2004) (Kyle, J.) (emphasis added). Nor have defendants established that the preliminary injunction should depend on whether essential program elements are provided, or even that the essential program elements are in fact being provided. The case defendants cite in support, *Andrew S. v. Massachusetts Department of Education*, 917 F. Supp. 70 (D. Mass 1995), is an appeal from a due process hearing, and the parents requested a preliminary injunction for services in addition to those ordered in the administrative proceedings. Here, the hearing officer's decision is final. Defendants are obligated to carry out the decision as written, not just what they deem to be the essential elements.

Independent evaluators have identified several services that D.C.C. needs in order to learn to read and to progress in school. A delay in implementing the services ordered by the hearing officer will delay the provision of a free and appropriate education to D.C.C., a harm that cannot be adequately remedied by after-the-fact money damages (if available) or by awarding even more

10

compensatory education. Dominique L. suffers irreparable harm by not receiving the required monthly progress reports; delayed reporting prevents her from staying current on D.C.C.'s education. The court, however, fails to see how Dominique L. or D.C.C. will be irreparably harmed by a delay in a records search, and they offer no reasons.

## C. Balancing Test

The most serious harm to defendants is the monetary cost of providing services. The cost to the school district does not outweigh the irreparable harm to D.C.C. and Dominique L. identified above. The hearing officer deemed these services necessary for D.C.C. to receive an appropriate education and for Dominique L. to stay abreast of her son's education.

## D. Public Interest

It is uncontested that the public interest is not harmed by granting a preliminary injunction.

## IV. Conclusion

Accordingly, plaintiffs are entitled to a preliminary injunction against the Board of Education of the City of Chicago. Plaintiffs shall submit a proposed order that complies with Fed. R. Civ. P. 52(a)(2) and 65(d) by March 3, 2011.

ENTER:

_____
Suzanne B. Conlon
February 25, 2011             United States District Judge